WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Handgis, et al., | No. CV-23-01971-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| State Farm Mutual Automobile Insurance Company, | |
| Defendant. | |

Pending before the Court is Defendant's Rule 12(b)(3) Motion to Dismiss for Improper Venue (Doc. 7) and Plaintiffs' Motion for Remand (Doc. 9).[1] For the reasons detailed below, both Motions are denied.

## BACKGROUND

This matter involves whether Defendant acted in bad faith when processing Plaintiffs' claim resulting from injuries sustained during a car accident. (Doc. 9 at 2–4). On November 2, 2016, George Handgis was a passenger in a truck owned by Titan Flooring Specialists, LLC. (Doc. 9 at 2). State Farm ("Defendant") was the insurer of Titan Flooring's truck. (*Id.*). While stopped at a red light, an unknown driver rear-ended the truck, causing George injury. (*Id.*). The unknown driver sped away without providing insurance or identifying information. (Doc. 1-3 at 3).

---

[1] On March 12, 2024, Defendant filed its Notice of Having Withdrawn Rule 12(b)(3) Motion to Dismiss for Improper Venue (Doc. 15). That notice confirmed to the Court that Defendant withdrew its Motion to Dismiss in its reply. (Doc. 11). Accordingly, Defendant's Motion to Dismiss is denied as moot.

Under its policy with Defendant, Titan Flooring had Uninsured Motorist Coverage ("UM") of up to $1,000,000.00. (Doc. 9 at 2). On December 2, 2017, George and his wife Sharon Handgis ("Plaintiffs") made a UM claim with Defendant. (*Id.* at 3). On October 17, 2019, Plaintiffs sent Defendant a policy limit demand. (*Id.*). In response, Defendant informed Plaintiffs that it did not have sufficient information to determine whether Plaintiffs were entitled to the policy limit amount and required George to undergo medical examinations and provide a statement under oath. (*Id.*). Despite continued communications and information sharing, Defendant never ruled on Plaintiffs' request and, instead, arbitration commenced on December 15 and 16, 2022. (*Id.*). On January 17, 2023, the Arbitrator awarded George $650,000.00 and Sharon $100,000.00. (*Id.* at 4).

On August 18, 2023, Plaintiffs filed a Complaint against Defendant in Maricopa County Superior Court for breach of implied duty of good faith and fair dealing in the administration of Plaintiffs' UM claims. (Doc. 1-3 at 2; 6–7). Plaintiffs sought "general and compensatory damages in an amount to be proven at trial," special damages for medical and other expenses, and punitive damages. (*Id.* at 7). Furthermore, Plaintiffs' Complaint indicated that the case was "Tier 2" under Rules 8(b) and 26.2(c)(3)(B) of the Arizona Rules of Civil Procedure, meaning Plaintiffs claimed more than $50,000 and less than $300,000 dollars. (*Id.* at 3). On September 18, 2023, Defendant filed a notice of removal in this Court. (Doc. 1 at 5).

On October 17, 2023, Plaintiffs challenged removal through a Motion to Remand. (Doc. 9). Plaintiffs also requested fees and costs under 28 U.S.C. § 1447(c). (Doc. 9 at 9-10).

**DISCUSSION**

**I.  Legal Standard**

Federal courts are courts of limited jurisdiction, possessing subject-matter jurisdiction only over matters authorized by Congress or the constitution. *Schaffer v. Gardner*, No. CV-21-08120-PCT-GMS, 2021 WL 3565734, at *1 (D. Ariz. Aug. 12, 2021) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). As the movant, the

Defendant bears the burden of establishing removal is proper. *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 682–83 (9th Cir. 2006). Where removal is based on diversity jurisdiction, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met," even if the complaint does not specify the amount of damages sought. *Id.* at 683.

**II.    Analysis**

Remand is not proper in this case because Defendant has sufficiently shown the amount in controversy qualifies this matter for diversity jurisdiction.

First, Defendant points to Plaintiffs' "Tier 2" designation for support that the amount in controversy exceeds $75,000.00. (Doc. 1 at 3). Parties agree that this designation alone is not sufficient to meet Defendant's burden. (*Id.*; Doc. 9 at 7). The "Tier 2" designation nevertheless provides distinct boundaries of what the amount in controversy is: between $50,000.00 and $300,000.00. Plaintiffs are seeking general damages—including for anxiety, humiliation, and inconvenience—as well as special and punitive damages based on Defendant's alleged bad faith actions regarding a claim that ultimately required Defendant to pay Plaintiffs a sum of $750,000.00. While the arbitration award cannot stand in for the amount in controversy in the instant case, the large size of the arbitration award logically indicates commensurably larger damages resulting from Defendant's alleged bad faith. Finally, regarding Plaintiffs' claimed damages, Defendant accurately points to the high price-tag associated with punitive damages.[2] Taken together, Defendant has already met its burden to show the amount in controversy meets the minimum requirements for diversity jurisdiction.

Defendant furthers its burden by pointing the Court towards similar cases with high amounts in controversy. Defendant points principally to *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 995 P.2d 276 (Ariz. 2000). There, an injured passenger made an

---

[2] Plaintiffs argue that Defendant cannot add alleged punitive damages to meet the amount in controversy because it has not presented specific facts showing extraordinary punitive damages. (Doc. 9 at 8). It is, of course, Plaintiffs who seek punitive damages—not Defendant. This is not an instance where Defendant is conjuring a specter of punitive damages to get over the finish line: it was Plaintiffs who requested and alleged punitive damages in the first instance.

Underinsured Motorist claim, which the insurer did not pay out until arbitration 14 months later. *Zilisch*, 196 Ariz. at 236–37, 995 P.2d at 278–79 (noting the arbitrators awarded the passenger $387,500).  Later, in a bad faith claim against the insurer, the Jury awarded the plaintiff $460,000.00 in compensatory damages and $540,000.00 in punitive damages. *Id.* at 237, 955 P.2d at 279.  This case is highly instructive as to the potential damages in the instant matter.

Plaintiffs attempt to distinguish this case by pointing out UM claims and Underinsured Motorist claims are different.  While true, the instant case is not about the differences between these types of policies because the matter before this court is a breach of duty of good faith and fair dealing.  As Plaintiffs themselves state in their complaint, "[t]here is an implied duty of good faith and fair dealing in *every* insurance policy." (Doc. 1-3 at 6) (emphasis added).  This matter involves a claim that attaches to every insurance policy.  Defendant cites other relevant and instructive cases from other states. (Doc. 12 at 2–3).  Plaintiffs also fail to successfully distinguish these cases.

In sum, Defendant has carried its burden to establish the amount in controversy is over $75,000.00.  Accordingly, removal of this case was proper.  As such, Plaintiffs are not entitled to any fees resulting from improper removal.

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Remand (Doc. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' request for fees and costs is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant's Rule 12(b)(3) Motion to Dismiss for Improper Venue (Doc. 7) is **DENIED AS MOOT**.

Dated this 4th day of April, 2024.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge